## UNION TRUST CO. et al. v. BEACH.

(Circuit. Court of Appeals, Fifth Circuit.    October 29, 1915.)

No. 2806.

1. APPEAL AND ERROR ⬥➡324—PARTIES—SEVERANCE.

A formal summons, followed by an order of severance, is not indispensable to the maintenance of an appeal by one of the parties to a decree, if it fairly appears from the record that the parties who might have joined have been notified to do so, and have refused.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1806–1809; Dec. Dig. ⬥➡324.]

2. CORPORATIONS ⬥➡480—MORTGAGES—PRIORITY OVER SECRET EQUITIES.

The intervener's guardian purchased lands and conveyed them to the B. Company, which executed a mortgage thereon to a trust company to secure an issue of bonds. The B. Company contracted for the sale of the land to the F. Company for a sum payable in installments to the trust company, which assented in writing and ratified the contract. One payment was made and the F. company thereafter became bankrupt. By order of the bankruptcy court, and with the consent of the B. Company, the trustee in bankruptcy surrendered and renounced the bankrupt's rights under the contract. The order of such court recited that the rights of the trust company were preserved under its contract with the B. company, and at the foot of the order was a consent thereto by the trust company, "with all rights of the trust company preserved." The land was sold at foreclosure for much less than the unpaid installments of the purchase price. The intervener claimed that her guardian purchased the land with her money. Held, that the rights of the trustee in the land were not subordinate to the secret equity of the intervener; the public records not disclosing its existence, and the trustee having no notice thereof when its rights attached.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ⬥➡480; Mortgages, Cent. Dig. §§ 307–343.]

3. CORPORATIONS ⬥➡480—MORTGAGES—PROPERTY SUBJECT—PAYMENTS BY PURCHASER.

The money paid by the F. Company was held by the trust company in its capacity as trustee under the deed of trust, and was subject to the lien thereof, though such company did not apply it on the secured debt, or make any mention thereof in a bill to foreclose the deed of trust, as it was obviously the intention of the contract that a compliance by the F. Company with the terms thereof would entitle it to a conveyance free from the incumbrance and have the effect of substituting the money paid in lieu of the land, and moreover the trustee's trust relation prevented its holding such payment free from the lien.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ⬥➡480; Mortgages, Cent. Dig. §§ 307–343.]

4. BANKRUPTCY ⬥➡268—SALES—MORTGAGES—PAYMENTS BY PURCHASER.

The lien of the deed of trust upon the payment had not been released or discharged; the trustee's consent to the order of the bankruptcy court not having that effect, especially as the land sold for less than the unpaid installments of the purchase price.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. ⬥➡268.]

Appeal from the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

---

⬥➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by the Union Trust Company to foreclose a deed of trust, in which Myrtis Beach intervened. From a decree in favor of the intervener, the Trust Company and others appeal. Reversed.

George S. Jones and Orville A. Park, both of Macon, Ga. (Hardeman, Jones, Park & Johnston, of Macon, Ga., on the brief), for appellants.

William ·M. Toomer, of Jacksonville, Fla., and Robert M. Hitch, of Savannah, Ga. (Hitch & Denmark, of Savannah, Ga., on the brief), for appellee.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge.   [1] This is an appeal by the Union Trust Company and the Mallary Mill Supply Company from a decree in favor of Myrtis Beach, rendered on her intervening petition filed in a foreclosure suit brought by the Union Trust Company. The petition asserted a claim to or upon the sum of $18,000, which had been received by the Union Trust Company under circumstances hereinafter stated. No party to the case other than Myrtis Beach appears to have an interest in sustaining the decree rendered in her favor. It appears, from the order of the District Judge allowing the appeal, that all defendants to the intervening petition other than the appellants were duly notified in writing to join in the appeal if they desired to do so, and that they failed and refused to join therein. It sufficiently appears that all parties to the suit, other than the appellants, who could have been adversely affected by the decree appealed from, had notice of the appeal and declined to join in it. The appeal is not subject to be dismissed on the motion of the appellee because such other parties did not join in it and there was no summons and severance. A formal summons, followed by an order of severance, is not indispensable to the maintenance of an appeal by one of the parties to a decree, if it fairly appears from the record that the parties who might have joined have been notified to do so and have refused. Johnson v. Trust Company of America, 104 Fed. 174, 43 C. C. A. 458. The motion to dismiss the appeal is denied.

In the year 1905 W. R. Beach bought certain lands in Calhoun county, Fla., and took title thereto in his own name. In the year 1910 he conveyed these lands to the Beach Manufacturing Company, and thereafter, in the same year, that company, to secure $200,000 of bonds issued by it, executed to the Union Trust Company a deed of trust or mortgage, covering those lands, other lands in the state of Georgia, and sundry articles of personal property. In the year 1913, after $30,-000 of the principal of the debt secured by that instrument had been paid, the Beach Manufacturing Company entered into a contract with the Florida Timber Products Company for the sale to the latter company of said Florida lands for the sum of $165,000, which was made payable in installments to the Union Trust Company, and the first installment, $18,000, was paid to that company shortly after the contract of sale was made. The Union Trust Company in writing assented

to and ratified that contract. Thereafter the Florida Timber Products Company was adjudged a bankrupt by the District Court of the United States for the Northern District of Florida, having made no payment on its contract to purchase other than the above-mentioned one of $18,-000. After the Union Trust Company had brought its suit in the District Court of the United States for the Southern District of Georgia for the foreclosure of the mortgage or deed of trust to it, the trustee in bankruptcy of the Florida Timber Products Company, pursuant to an order made by the court of bankruptcy, which order was consented to by the Beach Manufacturing Company, surrendered and renounced all rights of the bankrupt under its above-mentioned contract of purchase. That order contained the recital that:

"The rights of the Union Trust Company are preserved under their contract with the Beach Manufacturing Company."

It is not made to appear that the Union Trust Company had any connection with the making of that order, except such as is evidenced by its written statement found at the bottom of it, as follows:

"Consented to, with all rights of Union Trust Company preserved against Beach Manufacturing Company under its contract and mortgage."

After the above-mentioned Florida lands had, under a decree of foreclosure rendered in an ancillary suit brought by the Union Trust Company in the United States District Court for the Northern District of Florida, been sold for the sum of $25,000, and that sum, less the amount of costs and fees made payable therefrom, had been ordered by that court to be paid to the clerk of the United States District Court for the Southern District of Georgia, to be placed in the registry of that court, and to be distributed and paid out under the orders of that court, the appellee, Myrtis Beach, filed in the original foreclosure suit her petition of intervention, which prayed that the above-mentioned sum of $18,000 deposited with the Union Trust Company be adjudged and decreed to the Beach Manufacturing Company as trustee for the petitioner, and be adjudged and decreed to be unincumbered and unaffected by the deed of trust or mortgage to the Union Trust Company. The asserted right of the intervening petitioner was based upon the claim that W. R. Beach had improperly used in his purchase of the Florida land more than $18,000 which belonged to the petitioner, and of which he had possession as petitioner's guardian. The appeal is from a decree which sustained the claim set up by the intervening petition.

[2] It is not claimed, and there is no room for claiming, that, as to any land covered by the deed of trust to the Union Trust Company, the right of that company as trustee was subordinate to any claim which the petitioner, the appellee here, may have had. When the rights of the trustee attached, the public records did not disclose the existence of the appellee's claim, and the trustee did not otherwise have notice of it. The secret equity which is the basis of the claim of the appellee cannot prevail, if the payment of the $18,000 by the Florida Timber Products Company subjected that money to the lien of the deed of trust to the Union Trust Company, and nothing has occur-

red which is entitled to be given the effect of a release or discharge of that lien.

[3] The contract for the sale of the Florida lands to the Timber Products Company provided that that company should, upon its compliance with the terms of the contract, receive from the Beach Manufacturing Company "a good and sufficient warranty deed conveying said land in fee simple." The existence of the incumbrance on the land put it beyond the power of the seller to carry out this provision of the contract, unless the incumbrancer's consent to a release of its lien was secured. For the conduct of the parties to the contract in making the stipulated purchase price payable to the Union Trust Company, and in obtaining that company's assent to and ratification of the contract, no plausible explanation is suggested, other than the very obvious one disclosed by the fact that that company held an incumbrance on the land contracted about, and was entitled, so long as that incumbrance was in existence, to hold the land subject to it, unless an arrangement satisfactory to the holder of the incumbrance was made for its release of the land from the lien upon it. From the facts that all of the purchase price was made payable to the Union Trust Company, the holder of an incumbrance on the lands which were the subject of the contract, and that the contract was in writing assented to and ratified by that company, obviously it is to be inferred that the understanding was that a compliance by the purchaser with the terms of the contract was to have the effect of entitling it to a conveyance of the lands freed of the incumbrance, and of substituting the money paid to the holder of the incumbrance in lieu of the released land, with the result of transferring to that money in the hands of the trustee the lien to which theretofore the released land was subject. The money so paid, as much as the land for or upon which it was paid, is to be regarded as held by the Union Trust Company in its capacity as trustee under the deed of trust to it.

In effect the transaction was an agreement by the owner of land and the holder of a mortgage upon it to sell it for a sum made payable to the mortgagee in installments. In the case of such a sale the lien of the mortgage attaches to the proceeds of the sale in the same manner and with the same effect as it bound the premises before the sale was made. Markey et al. v. Langley et al., 92 U. S. 142, 23 L. Ed. 701; Lewis v. Dillard, 76 Fed. 688, 22 C. C. A. 488. When the incumbrance is a deed of trust to secure debts payable to a person or persons other than the trustee, the lien of the deed of trust attaches to each installment of the stipulated purchase price as it may be paid, and is not to be regarded as released or discharged unless the trustee in some proper way consents to such release or discharge, or something occurs which on equitable considerations is entitled to be held to have operated as a release or discharge. The trustee's trust relation to the subject of such a sale prevents his holding the proceeds of it, whether it is all or only part of the agreed price that is paid, freed from the lien which had existed against the thing so dealt with. The rights acquired by the Timber Products Company as against the deed of trust or the trustee to which the installments of the purchase price

were made payable were similar to those it would have had if its purchase had been under a decree for the foreclosure of the deed of trust. If a purchaser at such a sale fails without good cause to complete his purchase, he forfeits any deposit or partial payment he may have made, so far as it may be needed to make up a deficiency in price on a resale occasioned by his default. Camden v. Mayhew, 129 U. S. 73, 9 Sup. Ct. 246, 32 L. Ed. 608; 2 Jones on Mortgages (6th Ed.) § 1644.

[4] There is no evidence in the case from which it could be inferred that the Trust Company consented to release the lien of the deed of trust upon the $18,000 which was paid to it as the first installment of the stipulated purchase price. The language of its consent to the order of the court of bankruptcy under which the trustee of the bankrupt surrendered and renounced all its rights under the contract for the purchase of the lands by no means indicates a consent to relinquish any right which had attached to what was paid by the defaulting purchaser. The terms of that order make it plain that the consideration which moved the court to make it was that thereby the bankrupt estate was relieved of a large and burdensome claim against it. From the failure of the order to say anything about the $18,000 which had been paid to the Union Trust Company, it fairly is to be inferred that the understanding of the court making the order and of all parties concerned in it was that the bankrupt had forfeited that sum by its failure to carry out its contract, and that the Trust Company's right to hold and apply that money was not different from what it would have been if the other installments also had been paid to it. It may be assumed, without being conceded, that the claim asserted by the appellee would have been strengthened if it had been made to appear that on a resale of the land, either by the owner with the consent of the holder of the incumbrance or under a foreclosure decree, it had brought as much as or more than the price stipulated in the contract of sale. No such state of facts is disclosed. On the contrary, it appears that the trustee of the bankrupt purchaser has unconditionally forfeited the sum paid as the first installment of the purchase price, and that from a sale of the property under the foreclosure decree there has been realized a sum greatly less than that of the installments of the purchase price which were not paid. The conclusion is that nothing has happened which properly can be regarded as having the effect of releasing or discharging the lien of the deed of trust which attached to the $18,000 upon its payment to the Union Trust Company. The claim of the appellee is not strengthened by the failure of the Trust Company to apply that sum on the secured debt, or to make any mention of the receipt of it in its foreclosure bill. The recipient of that sum is in court as a party to the pending suit, and the money in its hands is subject to the orders of the court as to the proper application to be made of it.

It follows from the above-stated conclusions that the decree appealed from is erroneous, and should be reversed; and it is so ordered.